# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| CHUCKY LOWE, SR. and <br> CHUCKY LOWE, JR., <br><br> PLAINTIFFS, <br><br> V. <br><br> SAM HENSON, SPD; DAVID JOYNER, <br> Drug Task Force; and KEVIN BUSH, SPD, <br><br> DEFENDANTS. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 3:05-cv-275 <br> ) PHILLIPS <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND OPINION

In the matter before the Court, plaintiffs pursue a federal cause of action under 42 U.S.C. § 1983, as well as various related federal and state law claims. The defendants have filed motions for summary judgment [Docs. 40 and 42] asserting that the plaintiffs' claims, in their entirety, should be dismissed pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs have responded in opposition, and the defendants have filed replies and sur-replies. For the reasons that follow, defendants' dispositive motions [Docs. 40 and 42] are **GRANTED as set forth below**.

**I.     Summary of the facts**

As the law requires, all disputed facts and inferences are resolved most favorably for the plaintiffs. The Court merely provides an abridged summary of facts for the purposes

1

of this opinion.

On May 10, 2004, defendant Agent David Joyner ("Agent Joyner") and a confidential informant ("CI") arranged for plaintiff Chucky Lowe, Jr. ("Lowe, Jr.") to make a purchase of what he thought was oxycontin, a controlled substance. Specifically, Lowe, Jr. believed that he was to purchase 200 doses of oxycontin at a price of $6,000 from Agent Joyner.

The exchange was to take place at an Exxon in Sevierville, Tennessee. However, when Lowe, Jr. and his father, plaintiff Chucky Lowe, Sr. ("Lowe, Sr."), arrived at the Exxon, they directed Agent Joyner and the CI, who were in a separate vehicle, to follow them to a different location, Stan Crestwell's Market.[1] At Stan Creswell's Market, Lowe, Jr. got out of his vehicle and into the CI's vehicle, placing himself directly behind Agent Joyner. Lowe, Jr. then directed the CI to drive to Layman's Market Car Wash. Lowe, Sr. followed in his vehicle. During the drive, Agent Joyner delivered 200 doses of fake oxycontin to Lowe, Jr. in exchange for $6,000. While discussing business, Lowe, Jr. displayed a small handgun. Lowe, Jr. claims that the handgun fell out of his pant waist band and that the gun was brought only because he was "nervous." However, Agent Joyner states that Lowe, Jr. pointed the gun at his back and threatened him. Before leaving the vehicle, Lowe, Jr. discussed a future transaction with Agent Joyner for more doses of oxycontin.

---

[1] According to the defendants' account of the events, the parties met at a Texaco, rather than an Exxon, and then the group drove to a BP Station on Dolly Parton Parkway, rather than to Stan Crestwell's Market.

Due to technical difficulties, the "bust" did not occur at the end of the transaction as planned; rather, the agents regrouped immediately after the transaction, contacted the Assistant District Attorney, and were advised to proceed to Lowe, Sr.'s residence to secure the subjects. Agent Joyner then enlisted the help of defendant Agent Sam Hinson ("Agent Hinson") and defendant Agent Kevin Bush ("Agent Bush") for the arrests of the plaintiffs. At approximately 8:30 p.m., agents arrived at Lowe, Sr.'s home, where both Lowe, Jr. and Lowe, Sr. were located.[2] The agents set off a distraction device to facilitate their entry into the residence. After this point, the plaintiffs' and the defendants' recollection of the events widely differs. According to the plaintiffs, Agent Bush entered the residence first with a rifle and gave verbal commands. Agent Bush then placed the long barrel of his gun to the back of Lowe, Jr.'s neck with sufficient force to leave marks. Plaintiffs also assert that Agent Joyner and/or Agent Hinson kicked Lowe, Jr. in the face and/or back and tore his shirt. While the alleged beating occurred, Lowe, Jr. alleges that Agent Joyner exclaimed "I'll break you from pulling a gun on an officer." Lowe, Jr. admits that he was "moving around" when the beating occurred. At some point during the altercation, the agents placed handcuffs on Lowe, Jr. and escorted him outside. When moving Lowe, Jr. outside, Lowe, Jr. asserts that Agent Hinson intentionally tripped him while in handcuffs.[3] However, in his deposition, Lowe, Jr. concedes that he is not certain what caused him to trip forward.

---

[2]Shortly before the bust, Lowe, Jr. had consumed two doses of the oxycontin, discovering the placebo product, and was admittedly angry.

[3]Plaintiffs' complaint indicates that Agent Joyner was the agent who tripped Lowe, Jr. as he exited the residence. However, both Lowe, Jr.'s testimony and the defendants' account of the events identifies Agent Hinson as the agent who escorted Lowe, Jr. outside.

3

As to Lowe, Sr., the complaint and affidavit of Lowe, Sr. states that Lowe, Sr. was handcuffed by Agent Bush and placed face down on the living room floor. Then he was lifted by his handcuffed hands and kicked/pushed in the back when attempting to comply with the agent's order. The kick caused Lowe, Sr. to fall to the ground resulting in lacerations to his face and left knee.[4]

Defendants strongly dispute the plaintiffs' account of the events. Defendants claim that Agent Bush did not hold a gun to the plaintiff's neck, in particular, nor has Agent Bush ever held a gun close to anyone in that the individual could always grasp the gun causing a problematic situation. Further, both Agent Joyner and Agent Bush deny any physical contact whatsoever with the plaintiffs during the raid. Agent Hinson states that he was the agent who handcuffed both plaintiffs and moved them outside. Nevertheless, Agent Hinson asserts that the force he exerted was reasonable under the circumstances. Upon entering the trailer, Agent Hinson claims that Lowe, Jr. was "flailing and moving about clearly resisting the arrest efforts of the officers in the trailer." In fact, Lowe, Jr. was "on his knees, raising up and disobeying the officers' commands to get on the floor." Agent Hinson also asserts that a handgun was within close proximity to Lowe, Jr. Recognizing this danger, Agent Hinson states that he "ran to Lowe, Jr., wrapping him up from behind, and brought him to the floor."

---

[4] Plaintiffs' complaint indicates that Agent Bush was the agent who handcuffed and handled Lowe Sr. However, in Lowe, Sr.'s deposition, he is not sure who handcuffed him, and the defendants agree that Agent Hinson was the agent who handcuffed and handled Lowe, Sr.

Lowe, Sr. signed a consent form for the search of his residence, although the plaintiffs assert that the consent was not voluntary. The 200 doses of counterfeit oxycontin were uncovered, as well as small amounts of drugs and the firearm. As a result of the incidents on May 10, 2004, both Lowe, Sr. and Lowe, Jr., received criminal charges. Both of the plaintiffs pled guilty to all charges, including drug related charges, aggravated assault (on Agent Joyner), unlawful possession of a weapon, and resisting arrest.

Plaintiffs thereafter filed this complaint in state court asserting claims of excessive force, assault and battery, trespass to home, unlawful search/seizure, conspiracy to violate civil rights, official oppression/official misconduct, and violations of the Tennessee Constitution. The defendants then removed the subject suit to this District Court.

## II. Law applicable to Rule 56 of the Federal Rules of Civil Procedure

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 220 (6th Cir.1996).

**III.    Motion for summary judgment and applicable law**

A.    <u>Search and seizure</u>

In Count Five of the plaintiffs' complaint, plaintiff Lowe, Sr. claims that the defendant agents violated his civil rights by entering his home without a warrant. While not clearly set forth in the complaint, this allegation asserts a claim for alleged violation of Lowe, Sr.'s Fourth Amendment right to be free from unreasonable search and seizure. After careful consideration of the parties' arguments, the Court finds that the agents' actions were lawful due to the presence of exigent circumstances.

Exigent circumstances are situations where " 'real immediate and serious consequences' will 'certainly occur' if a police officer postpones [ ] action to obtain a warrant." *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (*quoting O'Brien*

*v. City of Grand Rapids*, 23 F.3d 990, 997 (6th Cir. 1994) (*quoting Welsh v. Wisconsin*, 466 U.S. 740, 751 (1984))); *see Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003). A court measures exigent circumstances by a standard of objective reasonableness, asking "whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." *Ewolski*, 287 F.3d at 501 (*quoting Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996). The following situations may give rise to exigent circumstances: "(1) hot pursuit of a fleeing felon; (2) imminent destruction of evidence; (3) the need to prevent a suspect's escape; and (4) a risk of danger to the police or others.*"* *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir.1994) (internal citations omitted); *see also Minnesota v. Olson*, 495 U.S. 91, 100 (1990).

The Sixth Circuit has held that:

> when considering whether exigent circumstances are present, the Supreme Court has directed that we balance the interests by weighing the governmental interest being served by the intrusion against the individual interest that would be protected if a warrant were required. *See, e.g., Welsh v. Wisconsin*, 466 U.S. 740, 750-53, 104 S.Ct. 2091, 2098-99, 80 L.Ed.2d 732 (1984); *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989). When "insistence on a warrant requirement would impede the achievement of the Government's objective," the Court has not hesitated to find that the scales tip in favor of the Government. *See Skinner*, 489 U.S. at 622-23, 109 S.Ct. at 1416.

*United States v. Plavack*, 411 3d 655, 664 (6th Cir. 2005).

In the instant matter, the defendants had a reasonable belief that either the

counterfeit oxycontin would be moved quickly to buyer(s) and/or the counterfeit pills would be consumed by Lowe, Jr. Lowe, Jr. had indicated that he wanted to buy another hundred of oxycontin doses within a day or two and advised Agent Joyner that part of these pills were for personal use. The agents were concerned that once Lowe, Jr. used the counterfeit pills, he would realize the police are on his trail and destroy the evidence, *see United States v. Santana*, 427 U.S. 38, 43 (1976), or that, after receiving the 200 doses of oxycontin, he would quickly "flip" the drugs for cash in order to make the next purchase from Agent Joyner. The case before the Court is not a situation where the agents could have impounded an area, such as a locker, until a warrant was obtained, *see People v. Vogel*, 58 Ill. App. 3d 910 (3rd Cir. 1978), or where the occupants could be observed so that evidence would not be destroyed. *See Toles v. Friedman*, 238 F.3d 424 (6th Cir. 2000) (Table). The plaintiffs were in possession of evidence that could be destroyed easily. Agents had to act promptly to effect an arrest and preserve the evidence. *See Sangineto-Miranda*, 859 F.2d 1501 (6th Cir. 1998) (finding exigent circumstances in warrantless entry when officers reasonably believed drugs were in building, someone was inside, and occupants may soon become aware that police are after them). Under the particular circumstances of this case and the inherent necessities of the situation at the time, the Court finds that the entry and search was lawful.

B.     Title 42 U.S.C. § 1983

1.     Application of Heck v. Humphrey

In the case before the Court, both Lowe, Jr. and Lowe, Sr. claim that the defendant agents used excessive force against them during the arrests. However, Lowe, Jr. plead guilty to resisting arrest. Such a plea legally affects the dynamics of an excessive force claim. Under Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest. Accordingly, "a guilty plea and resultant conviction of such a charge necessarily includes a finding that the officer did not use excessive force." *Roberts v. Anderson*, No. 05-6828, 2007 WL 79057, at *6 (6th Cir. Jan. 9, 2007). In other words, a plaintiff's excessive force claim is barred because "[the plaintiff] could have raised excessive force as a defense to the assault charge, but instead . . . chose not to contest the charge." *Cummings v. City of Akron*, 418 F.3d 676, 683 (6th Cir. 2005). These principles were announced in the seminal Supreme Court case, *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), where the Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the compliant must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."

Notably, this bar only applies to claims of excessive force either prior to or intertwined with the suspect's resistance. *Stone v. Watkins*, No. 1:04cv259, 2007 WL 1001847, at *4-5 (E.D. Tenn. March 30, 2007) (*citing Potvin v. City of Westland Police Dep't*, No. 05-CV-702901, 2006 WL 3247116, at *9 (E.D. Mich. Nov. 7, 2006) ("Although Plaintiff pleaded guilty to a resisting arrest charge . . ., *Heck* does not bar any excessive force that occurred after Plaintiff had been arrested."); *Schreiber v. Moe*, 445 F.Supp.2d

799, 814 (W.D. Mich. 2006) ("This portion of the excessive force claim [alleging that the officer kicked the plaintiff while he was handcuffed and in custody] is not, however, barred by *Heck* because it is not inextricably intertwined with the parties' initial altercation and [Plaintiff's] state court misdemeanor conviction.")).

In the instant case, although Lowe, Jr. asserts that he did not resist arrest and that his actions were only in self-protection, he plead guilty to resisting arrest in the underlying criminal case. A judgment was entered accordingly. Nothing in the record suggests that his conviction has been challenged, overturned, and/or expunged. Thus, the Court must accept that plaintiff Lowe, Jr. did resist arrest, and, to the extent that Lowe, Jr.'s § 1983 claim is based on allegedly excessive force that was applied prior to his resistance or that was inextricably intertwined with his resistance, *Heck* would bar the assertions of such a claim. However, to the extent that Lowe, Jr.'s § 1983 claim is based on allegedly excessive force applied after his resistance, *Heck* would not bar the assertions of such a claim. Further, the Court must consider the agents' actions in arresting Lowe, Sr., who was not charged and convicted of resisting arrest.[5]

### 2. *Evidence regarding excessive use of force*

Having resolved the issue of a bar to plaintiff Lowe, Jr.'s claim under *Heck v.*

---

[5] Defendant Agent Hinson states in his reply that he was not given leave to file his amended complaint to assert the affirmative defense of collateral estoppel. However, the record reflects that Agent Hinson's motion was granted on September 8, 2006 [Doc. 37] by the Honorable H. Bruce Guyton.

*Humphrey*, the Court will now address the evidence presented in the record that bears on whether the agents used excessive force against the Lowe, Sr. in his arrest and Lowe, Jr. after his resistence. While the Court strives to construe the plaintiffs' claims in the light most favorable to them, the plaintiffs, unfortunately, have provided scant evidence in support of their claims, and very little clarification of their account of the events. The most significant evidence is the deposition testimony excerpts of the plaintiffs, which are attached to the parties' motions and responses, as the Court is looking for a "genuine" issue in the evidence such that a reasonable jury could return a verdict for the plaintiffs. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The Fourth Amendment of the United States Constitution guarantees all citizens the right "to be secure in their persons" and protects "against unreasonable seizures" of a person. U.S. CONST. amend. IV. Under the Fourth Amendment, "the 'reasonableness' of a particular seizure depends not only on when it is made, but also on how it is carried out." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985); *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005). The " 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

In determining the reasonableness of an officer's use of force in effecting a seizure, a court weighs the plaintiff's interest in not being subjected to the alleged force at issue against the officers' interest in performing the actions, as gauged by the severity of the

11

crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the plaintiff is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396 (citing *Garner*, 471 U.S. at 8-9); *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006). "[T]he ultimate question is 'whether the totality of the circumstances justifies a particular sort of seizure.' " *St. John*, 411 F.3d at 771 (quoting *Graham*, 490 U.S. at 396). In resolving this question, a built-in measure of deference is given to the officer's "on-the-spot judgment" concerning the level of force necessary in light of the circumstances of the particular case. *Id.* (*citing Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002)).

As the agent's actions before and during Lowe, Jr.'s resistence are barred by *Heck*, the Court examines whether Agent Hinson used excessive force after Lowe, Jr.'s resistance, that is, as he escorted Lowe, Jr. outside the home. As stated in his complaint, Lowe, Jr. claims that he was "tripped . . . [, which] caused him to fall to the ground, causing further injury." However, in an examination of Lowe, Jr.'s testimony, he concedes that he is not sure what caused him to trip once outside the residence. Relevant testimony from Lowe, Jr.'s deposition discloses in part as follows:

> A. I don't know where his right hand was at.
>
> Q. Where was his left hand?
>
> A. I don't know. I couldn't see his right or left hand. He had hold of my handcuffs.
>
> Q: And you couldn't see his feet, either, right?
>
> A: No, I wasn't looking at his feet. I was looking straight ahead.

> Q: Well, how is it that if you didn't see him trip you, that you know that he tripped you?
>
> A: Because I felt someone's foot trip me. And I didn't get all those scratched on me from jail or, you know.
>
> Q: How is it that you know it was a foot if you didn't see it?
>
> A: I don't know. It must have been a dog or something. I'm not sure, sir.

Moreover, in the Court's assessment of Lowe, Jr.'s testimony, Lowe, Jr. is not aware of the amount of contact that occurred between any of the defendant agents, who were just a part of the team making the arrests, and himself. Additionally, Lowe, Jr. did not seek medical treatment related to this incident.

Even if Agent Hinson had in fact put his feet in front of Lowe, Jr., "[n]ot every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (*quoting Johnson v. Glick*, 481 F.2d, 1028, 1033, *cert. denied*, 414 U.S. 1033 (1973)); *see Miller v. Cate*, 86 Fed. Appx. 830, 833-34 (6th Cir. 2004) (although plaintiff was handcuffed, pushed out the back door, and fell on the concrete after a confrontation with the police, the officers' actions were reasonable under the circumstances of a scene becoming increasingly out of control and dangerous). In the instant situation, Lowe, Jr. acknowledges that he was resisting the agent's effort to arrest him, unnecessarily escalating an already tense situation. It is clear that Agent Hinson was in a rapidly developing situation. Removing Lowe, Jr. from the scene by force in a quick and rough manner was reasonable under the totality of the circumstances.

Similarly, the Court finds that no excessive force was used by the agents in arresting Lowe, Sr. Lowe, Sr. asserts in his complaint, which he adopts by affidavit, that he was pulled up from the ground by his handcuffs, in a violent manner; escorted outside; and then kicked and/or pushed to the ground when he did not quickly comply with the agent's commands. Again, the Court must look at the circumstances particular to this case. In the early part of the evening, Lowe, Sr. was party to a drug set up where an undercover agent was assaulted. The agents were aware that the plaintiffs were armed drug dealers. Further, during the arrests, officers were not only faced with a situation where Lowe, Jr. was actively resisting arrest, but numerous individuals were involved and moving within the confines of a small trailer. The Court finds that this is not a situation where law enforcement continued to use force after the force was justified, that is, after the situation was secured. *E.g. Burden v. Carroll*, 108 Fed.Appx. 291, 294 (6th Cir. 2004). Rather, the force, as alleged, was used during the "heat" of the arrests. The agents needed to gain control of the escalating scene, immediately, and they did so by arresting Lowe, Sr., albeit in a rough manner, forcing Lowe, Sr. to comply with verbal commands, and quickly moving him outside. *See Collins v. Nagle*, 892 F.2d 489, 497 (1989) (no excessive force found where plaintiff approached a scene and officers were uncertain of plaintiff's intentions amidst the escalation of activity involving arrests).

Even if the agent's use of force was not entirely necessary while arresting Lowe, Sr. and escorting him outside, it does not rise to the level of excessive force necessary for a violation of the Fourth Amendment. *See Buston v. Nolte*, 473 F.Supp.2d 802, 813 (S.D. Ohio 2007); *Graham*, 490 U.S. at 396-97 (holding that "[t]he calculus of reasonableness

14

must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.). Under the circumstances surrounding the agents' action in this case, the agents actions were objectively reasonable.

As noted previously, an issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. A court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Id.* at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. If a court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

In an examination of the record and the applicable law, no genuine issue of material fact exists, and the defendants are entitled to summary judgment as a matter of law with regard to plaintiffs' claims of excessive force pursuant to § 1983. Even if the agents' actions were objectively unreasonable, which they were not, they did not involve "clearly

established constitutional rights of which a reasonable person would have known." *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir.2002) (*quoting Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir.1996)). Thus, the agents are also protected by qualified immunity because the unlawfulness of the conduct was not apparent. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir.1999); *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991).[6] The agents actions fell in the "hazy border between excessive and acceptable force." *Saucier v. Katz*, 533 U.S. 194, 206 (2001). Qualified immunity is designed to protect officers against this hazy border. *Id.*

### C. Conspiracy to violate civil rights

"To establish a claim for conspiracy under [civil rights statutes], plaintiff must prove: (1) conspiracy involving two or more persons; (2) for purposes of depriving, directly or indirectly, person or class of persons of equal protection of the laws; (3) act in furtherance of conspiracy; and (4) which causes injury to person or property, or deprivation of any right or privilege of citizen of United States." *Sharp v. Rainey*, 910 F.Supp. 394 (E.D. Tenn. 1996) (quoting *Johnson v. Hills & Dales General Hosp.*, 40 F.3d 837, 839 (6th Cir.1994)). In cases where there is no underlying constitutional injury, there cannot be a claim for conspiracy. *Gumble v. Waterford Township*, 171 Fed.Appx. 502 (6th Cir. 2006).

---

[6]Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As a threshold matter, a court first considers whether "the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If, upon review, a court determines that the officer in question violated the claimant's constitutional rights, the court proceeds to a second question: whether at the time of the alleged violation that right was "clearly established." *Id.*

16

As discussed above, plaintiffs failed to allege a viable constitutional injury. Accordingly, plaintiffs cannot maintain a conspiracy claim.

**IV.    Conclusion**

For the reasons hereinabove set forth above, defendants' motions for summary judgment [Docs. 40 and 42] are hereby **GRANTED**.  Counts Four and Five of plaintiffs' complaint concerning violations of federal rights, that is, plaintiffs' excessive force and conspiracy claims, are dismissed on the merits with prejudice. With respect to Counts One, Two, Three, Six, and Seven, the Court had supplemental jurisdiction over the properly asserted state law claims pursuant to 28 U.S.C. § 1367.  However, a court may decline such supplemental jurisdiction where the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). The Court declines to exercise its supplemental jurisdiction over these matters. Accordingly, plaintiffs' state law claims are dismissed without prejudice to refiling in the appropriate state court.

**IT IS SO ORDERED.**

                                            **ENTER:**

                                            s/Thomas W. Phillips
                                            UNITED STATES DISTRICT JUDGE